## Case No. 16,093.

### UNITED STATES v. PROUT.

[1 Cranch, C. C. 203.] [1]

Circuit Court, District of Columbia. Dec. Term, 1804.

NUISANCE—DISORDERLY HOUSE.

The selling of spirituous liquors to negroes, in a public manner, assembled in considerable numbers, and suffering them to drink the same in and about the house on the Sabbath, constitutes it a disorderly house.

[Cited in State v. Crawford, 28 Kan. 733.]

[This was an indictment against W. Prout.]

---

## Case No. 16,094.

### UNITED STATES v. PROUT.

[4 Cranch, C. C. 301.] [1]

Circuit Court, District of Columbia. March Term, 1833.

FORGERY—EVIDENCE—COMPARISON OF HANDWRITING—SLAVERY—ENTICING AWAY.

1. Comparison of hands is not evidence to prove forgery. Witnesses skilled in handwriting will not be permitted to give their opinion, upon inspection of the papers, whether the forgery was done by the defendant.

2. A count under the Maryland act of 1796 (chapter 67, § 19), for giving a pass to a slave, is bad if it do not aver that the master or owner was thereby deprived of the service of his slave. But upon conviction of a free person on an indictment under the tenth section of the Maryland act of 1751 (chapter 14), for enticing a slave to run away, and who actually ran away, the offender may be fined under the nineteenth section of the Maryland act of 1796 (chapter 67), without an averment of loss of service.

---

[1][Reported by Hon. William Cranch, Chief Judge.]

The defendant [John W. Prout] was tried, upon two indictments, by the same jury. The first indictment was for forging a certificate of freedom under the seal of this court.

Upon the trial, Mr. Key, U. S. Atty., offered to show to the jury, the prisoner's signature, written in the presence of the marshal, and to allow them to compare it with the handwriting of the forged certificate, and cited 4 Starkie, Ev. 570.

But THE COURT (nem. con.) rejected the evidence.

Mr. Key then offered to submit the papers to a witness skilled in handwriting, and to give the opinion of the witness in evidence, whether the paper was forged by the prisoner.

But THE COURT (nem. con.) refused; and upon that indictment the jury found the prisoner not guilty.

The second indictment had two counts. The second count in that indictment was under the Maryland act of 1796 (chapter 67, § 19), for giving a pass to the slave of one Lucy Miller, without averring that she thereby was deprived of the service of her said slave.

THE COURT said that this count was insufficient, and instructed the jury that the United States could not recover judgment upon it; and the jury found the prisoner not guilty on that count.

The first count of the second indictment was upon the Maryland act of 1751 (chapter 14, § 10), by which it is enacted, "that if any free person shall entice and persuade any slave within this province, to run away, and who shall actually run away, from the master, owner, or overseer, and be convicted thereof by confession, or verdict of a jury upon an indictment or information, he shall forfeit and pay the full value of such slave, to the master or owner of such slave, to be levied by execution on the goods, chattels, lands, and tenements of the offender, and in case of inability to pay the same. shall suffer one year's imprisonment without bail or mainprise." This first count of the second indictment charged that the defendant, "being a free person, did, on," &c., "at," &c., "entice and persuade a certain slave named. Joseph Dozier, the property of Lucy R. Miller, of Washington county. the said slave then and there being in the said county, to run away, which said slave did then and there actually run away from his said mistress and owner, against the form of the statute," &c.

Upon this first count of the second indictment the jury found the prisoner guilty; and his counsel, Mr. W. L. Brent, moved the court in arrest of judgment as to any fine or corporal punishment. The conviction only gives the owner a right to recover the value of the slave, by a new action founded upon the verdict.

Mr. Key, contra, contended that the court must hear evidence of the value, and then render judgment according to the statute,

for the value thus ascertained by the court. 11 Petersd. 718.

. Mr. Miller, being sworn to testify to the court, stated the value of the slave to be $600. The slave, however, has been recovered by the owner, and the expense of recovering, and loss of service, were much less than the value of the slave.

CRANCH, Chief Judge, after a considerable investigation of cases analogous to this, suggested the following judgment (see Act Md. 1751, c. 14, § 10): Whereupon, all and singular the premises being by the court here seen and understood; and it further appearing to the court here that the said slave in the said first count in the said indictment mentioned, is of the full value of six hundred dollars current money of the United States: It is considered that the said United States recover against the said John W. Prout the sum of six hundred dollars, and the further sum of —— for their costs, &c., the said sum of six hundred dollars being the full value of the said slave, to be paid to the said Lucy R. Miller in the said first count in the said indictment mentioned; she, the said Lucy R. Miller, being the mistress and owner of the said slave. The said sum of six hundred dollars to be levied by execution on the goods, chattels, lands, and tenements of the said John W. Prout; and in case of his inability to pay the same, then that the said John W. Prout shall suffer one year's imprisonment from this 4th day of May, 1833, without bail or mainprise. See Co. Ent. 368, b; Rastell's Ent. 218–220, tits. "Detinue," "Judgment," 5, 6, 8–13, 16–18, "Chattel," "Detinue of Chattels"; Rastell's Ent. 211, b, "Execution in Detinue," 216, b, "Execution," 8.

THE COURT, however (CRANCH, Chief Judge, contra) gave judgment for a simple fine of $50, under the act of 1796 (chapter 67, § 19).

CRANCH, Chief Judge, was of opinion that the prisoner could not be punished under that act, because there was no averment of loss of service; which averment the court, on the trial, had deemed so necessary that they had instructed the jury that the United States could not recover upon the count founded thereon.